IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
                              )
AMY KITTELL,                  )
                              )
          Plaintiff,          )
                              )
v.                            )      Civil Action No. 07-0424
                              )
RIDGEWOOD CONSTRUCTION,       )
INCORPORATED, et al.,         )
                              )
          Defendants.         )
                              )
```

## MEMORANDUM OPINION

This matter comes before the Court on Defendants' Motion for Summary Judgment as to Count I, with all other issues being resolved in this case by rulings from the bench. Plaintiff's Complaint asserts in Count I that she was subject to gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Plaintiff asserts four theories of liability under Title VII: (1) discriminatory termination, (2) hostile work environment, (3) disparate treatment, and (4) retaliation.

In 1995, Plaintiff was hired by Defendant Craig Johnson as an independent contractor to assist in the sale of homes for a construction company, Defendant Ridgewood Construction, Inc. Johnson is the sole shareholder and President of Ridgewood.[1]

---

[1]Johnson is also the sole shareholder and President of CT Park, Inc., a corporation affiliated with Ridgewood. CT Park is

Plaintiff held this position until April, 2005, when Johnson hired Plaintiff as an employee of Ridgewood in the position of director of purchasing, estimating, and design ("PED"). Plaintiff contends that Ridgewood and Johnson discriminated against females in various ways over the course of her employment.  Jerry Cantrell, a Ridgewood employee, behaved aggressively towards female customers and female Ridgewood employees, including Plaintiff.  Despite Plaintiff's complaints to Johnson, Cantrell repeatedly entered Plaintiff's office and shut the door, frequently "underess[ing] [her] with his eyes" and once attempted unsuccessfully to kiss Plaintiff.  Moreover, Cantrell undermined Plaintiff's authority with other Ridgewood employees.  After receiving complaints from Plaintiff and other female employees about Cantrell's inappropriate behavior, Johnson gave Cantrell the option to resign from Ridgewood instead of being fired.  Cantrell resigned in July, 2005.

In addition, there is evidence that other male Ridgewood employees behaved aggressively toward women.  Neil Mayhew, Plaintiff's predecessor as PED director, had a contentious relationship with Ridgewood employee Alyce Anthony and brought her to tears on multiple occasions and had various performance-

---

named as a Defendant in this case.  However Plaintiff was employed only by Ridgewood and not by CT Park during the relevant time period.  Therefore Plaintiff's claim of employment discrimination is only cognizable against Ridgewood.

related issues.  Johnson and Mayhew met several times to discuss
complaints regarding his behavior and performance before his
employment was ultimately terminated.  In addition, Wesley
Whiting, a Ridgewood construction worker, attempted to sexually
assault a female Ridgewood employee.  Johnson reprimanded
Whiting, but did not fire him, a decision that Plaintiff strongly
protested.  Moreover, Plaintiff testified that Johnson
consistently referred to difficult female employees and customers
as "bitches."

Shortly after Cantrell's resignation, Johnson began to
receive complaints regarding Plaintiff's behavior toward other
female employees.  At least four female Ridgewood employees
complained to Johnson that Plaintiff was "power hungry" and took
a disrespectful tone in dealing with them.  In an August, 2005
resignation letter, Alyce Anthony criticized Plaintiff's
management of the PED department and claimed that she had
resigned because of her inability to get along with Plaintiff.
Anthony's letter specifically stated that "I cannot and will not
work for a manager [Plaintiff] that continues to disrespect and
manipulate the company and its employees at every turn."

Prior to counseling Plaintiff about these complaints,
Johnson met with a human resources consultant to produce a
"coaching script" for Johnson to follow in his meeting with
Plaintiff.  During the meeting with Plaintiff, Johnson told her

3

that he was concerned about how she interacted with other female
employees and noted that certain employees were upset by
Plaintiff's demeanor.   Plaintiff told Johnson that her actions
toward other employees were always respectful and vowed to
improve her relationships with specific complaining employees.

In October, 2005, Mary Serrano, Cantrell's former assistant,
told Johnson that she could not work with Plaintiff any longer
and would resign at the end of the year as a result.   Johnson
continued to receive complaints from other Ridgewood employees
about Plaintiff's attitude and demeanor.   On October 28, 2005,
with consultation from Ridgewood's human resources director,
Johnson fired Plaintiff on account of the continuing complaints
he had received about her behavior toward fellow employees.
Johnson hired Plaintiff's assistant, Barbara Dobberthien, to
replace Plaintiff.

Summary judgment is appropriate where there is no genuine
issue as to any material fact.   See Fed. R. Civ. P. 56(c).   Once a
motion for summary judgment is properly made and supported, the
opposing party has the burden of showing that a genuine dispute
exists.   See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574, 586-87 (1986).   A material fact in dispute appears
when its existence or non-existence could lead a jury to
different outcomes.   See Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986).   A genuine issue exists when there is

sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party. See id. Mere speculation by the non-moving party "cannot create a genuine issue of material fact." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985); see also Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411-12 (4th Cir. 1986). Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When a motion for summary judgment is made, the evidence presented must always be taken in the light most favorable to the non-moving party. See Smith v. Virginia Commonwealth Univ., 84 F.3d 672, 675 (4th Cir. 1996) (en banc).

Plaintiff advances four theories of liability under Title VII: (1) discriminatory termination, (2) hostile work environment, (3) disparate treatment, and (4) retaliation. Summary judgment motions under Title VII are analyzed under the McDonnell Douglas burden-shifting framework whereby the plaintiff must make a prima facie showing of discrimination, after which the defendant may rebut that prima facie showing by demonstrating that its behavior was legitimate and non-discriminatory. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973) If the defendant has made a rebuttal showing, the plaintiff may

5

survive summary judgment by demonstrating that the defendant's arguments are pretext for discrimination.  Id.

To establish a prima facie case of discriminatory termination, Plaintiff's evidence must demonstrate that: (1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, (4) the position remained open or was filled by a similarly qualified applicant outside the protected class.  Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004)(en banc).  The evidence shows that Plaintiff, as a female, is a member of a protected class, was qualified for the position, and suffered the adverse employment action of being terminated. However, Plaintiff fails to establish a prima facie case of discriminatory termination because she was replaced by Barbara Dobberthien, a member of the same protected class.

The Fourth Circuit has held that there is an exception to the requirement that a terminated plaintiff's position be filled by a qualified applicant outside the protected class where the firing and hiring decisions are made by different decision-makers.  See Lettieri v. Equant, Inc., 478 F.3d 640, 647-48 (4th Cir. 2007); Miles v. Dell, Inc., 429 F.3d 480, 489 (4th Cir. 2005).  As Johnson made both the decision to fire Plaintiff and to hire her replacement, this exception does not apply. Furthermore, there is no evidence that Defendant hired a female

6

replacement "to disguise its own act of discrimination toward []
[P]laintiff." Id. at 488 (quoting Brown v. McLean, 159 F.3d 898,
905-06 (4th Cir. 1998)).

Even if Plaintiff could establish a prima facie case of
discriminatory termination, Ridgewood has articulated legitimate,
non-discriminatory reasons for her termination.  The evidence
shows that Johnson chose to terminate Plaintiff's employment
because of the repeated complaints from multiple Ridgewood
employees concerning Plaintiff's attitude and temperament in the
workplace.  Plaintiff has offered no evidence to show that
Johnson's decision to fire her was pretext for gender
discrimination.

To establish a prima facie hostile work environment claim, a
plaintiff must prove that: (1) the subject conduct was unwelcome,
(2) it was based on plaintiff's gender, (3) it was sufficiently
severe or pervasive to alter the conditions of employment, and
(4) it was imputable on some factual basis to the employer.
Hopkins v. Baltimore Gas and Elec. Co., 77 F.3d 745, 753 (4th
Cir. 1996)(citing Spicer v. Commonwealth of Va., 66 F.3d 705, 710
(4th Cir. 1995)(en banc)).  Plaintiff is unable to establish a
claim for hostile work environment because the described behavior
is not sufficiently severe or pervasive enough to alter the
conditions of Plaintiff's employment.  Much of Plaintiff's
hostile work environment claim focuses on Cantrell's treatment of

7

her by undermining her authority, "undressing her with his eyes,"
and attempting to kiss her.  While Cantrell's behavior was
inappropriate, it is not severe enough to alter the conditions of
Plaintiff's employment.  Plaintiff complained to Johnson
repeatedly about Cantrell's behavior and Johnson ultimately told
Cantrell that he would be fired if he did not resign.  The record
demonstrates that Plaintiff's complaints to Johnson were taken
into consideration rather than ignored, and steps were taken to
improve Ridgewood working conditions to satisfy Plaintiff's
concerns.

Plaintiff also points to Johnson's repeated reference to
difficult women as "bitches" as evidence of a hostile work
environment.  While inappropriate, use of the word "bitch,"
without more, does not constitute conduct that is severe or
pervasive enough to alter the terms and conditions of employment.
Moreover, the record shows that both Cantrell and Johnson
exhibited similar behavior toward non-female employees.  Both
Cantrell and Johnson would lose their tempers with male and
female employees alike, thus indicating that the inappropriate
conduct was not entirely gender-based.

A plaintiff establishes a prima facie case of disparate
treatment when she shows that (1) she belongs to a protected
class, (2) she suffered adverse employment action, (3) she was
performing her job duties at a level that met the employer's

8

legitimate expectations at the time of the adverse action, and
(4) a similarly situated person outside her protected class
received more favorable treatment.  Baqir v. Principal, 434 F.3d
733, 741 (4th Cir. 2006).  Plaintiff's disparate treatment theory
is based on the contention that Ridgewood applied its
disciplinary procedures in a discriminatory fashion.  Plaintiff
cannot establish a prima facie case of disparate treatment
because she is unable to show that she was performing her job
duties at a level that met her employer's legitimate expectations
and she is unable to identify a similarly situated male that
received more favorable treatment.

The record demonstrates that, prior to her discharge,
Johnson and the Ridgewood human resources department had received
numerous complaints from numerous employees concerning
Plaintiff's behavior in the workplace.  In his "coaching session"
with Plaintiff, Johnson apprised Plaintiff of these complaints,
yet Plaintiff continued to engage in behavior her co-employees
found objectionable.  Consequently, Plaintiff failed to meet her
employer's legitimate expectations by failing to treat other
Ridgewood employees in a courteous and respectful manner.

Plaintiff argues that in terminating her employment, Johnson
did not use the company's three or four strike disciplinary
policy, instead engaging her in only a single coaching session.
Plaintiff specifically points to Neil Mayhew, her predecessor as

PED director, as a similarly situated male who received the
benefit the more lenient three or four strike policy.   Plaintiff
argues that Johnson received several complaints about Mayhew's
treatment of Anthony, yet did not fire him until after several
coaching sessions.   While it is true that Mayhew received more
coaching sessions prior to his termination than Plaintiff did,
the subject of Mayhew's sessions differed from Plaintiff's.   The
bulk of Mayhew's coaching focused on job performance issues, such
as the inability to complete tasks in an appropriate length of
time.   Plaintiff's coaching sessions, on the other hand, focused
on her inability to get along with other Ridgewood employees.   To
the extent that Mayhew's coaching sessions covered complaints
from other Ridgewood employees concerning Mayhew's treatment of
them, there is no evidence that any employee quit or threatened
to quit Ridgewood on account of Mayhew.   Indeed, Anthony
complained to Johnson about Mayhew's behavior but did not quit or
threaten to quit because of it.   In Anthony's letter of
resignation, she specifically identified Plaintiff's treatment of
her as a primary cause.

Moreover, the record shows that Ridgewood's policy was more
loosely defined as a "coaching policy" whereby workplace
complaints and disputes would be discussed with the offending
party rather than a rigid "three or four strikes and you're out"
policy.   The record unequivocally demonstrates that Johnson and

Plaintiff engaged in a formal "coaching session" at least two months prior to her termination and that the complaints made about Plaintiff before and after that coaching session were more severe than the complaints made about Mayhew.  Consequently, Plaintiff is unable to show that a similarly situated male received the benefit of a more lenient disciplinary policy.

Moreover, even if Plaintiff were able to establish a prima facie case of disparate treatment, Defendants have offered legitimate non-discriminatory reasons for their actions.  While there is no indication that Ridgewood used different procedures in dealing with complaints regarding Plaintiff's behavior, Defendants have offered legitimate reasons for the procedures they did use.  Faced with complaints regarding Plaintiff's demeanor and her treatment of fellow employees, Johnson met with Plaintiff to discuss these complaints and how to avoid similar conflict in the future.  One of the complaints discussed was Anthony's resignation letter citing Plaintiff's behavior as a cause of her resignation.  Weeks after this "coaching session," which Johnson prepared for by consulting a human resources specialist, Johnson again received similar complaints about Plaintiff's behavior toward other employees.  These complaints included a letter from Mary Serrano threatening resignation on account of Plaintiff's behavior.  Faced with multiple complaints from multiple sources and the possibility of losing two employees

11

on account of Plaintiff's behavior in a short time span, Johnson chose to fire Plaintiff after the second set of complaints in consultation with an official from the Ridgewood human resources department. The desire to maintain harmony in the workplace is a perfectly legitimate business reason to fire an employee whose behavior elicits complaints from other employees, especially when other employees quit or threaten to quit if that employee remains on staff. Moreover, Plaintiff offers no evidence that this desire for office harmony is pretext for gender discrimination. Indeed, Plaintiff admits that other female employees received multiple coaching sessions prior to termination. This indicates that Defendants considered Plaintiff's behavior severe enough to warrant swift action and that her gender played no role in her treatment.

To establish a prima facie case of retaliation, Plaintiff's evidence must demonstrate that: (1) she engaged in protected activity under Title VII, (2) the employer took adverse employment action against her, and (3) there is a causal connection between the protected activity engaged in by the plaintiff and the subsequent action taken by the defendant. See Monday v. Waste Mgmt. of N. Am., Inc., 126 F.3d 239, 242 (4th Cir. 1997). Plaintiff argues Defendants retaliated against her complaints about Cantrell's inappropriate behavior by firing her. However, Plaintiff has put forward no evidence of a causal

12

connection between these two events.  First, Plaintiff complained about Cantrell's behavior in May, 2005 and was not fired until the end of October, approximately five months later.  See Hooven-Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir. 2001)("a lengthy time lapse between the employer becoming aware of the claimant's protected activity and the alleged adverse employment action negates any inference that a causal connection existed").  Indeed, the record indicates that Plaintiff was terminated because of the various complaints concerning her attitude toward her fellow employees, a legitimate non-discriminatory reason for her termination.  Moreover, there is no evidence that this termination was pretext for gender discrimination.

For the reasons stated above, Defendants are entitled to summary judgment on Count I.

An appropriate order shall issue.


                                        /s/
                              _____
                              Claude M. Hilton
                              United States District Judge


Alexandria, Virginia
March  5  , 2008


13